Good morning. My name is David Hopper-Bush for The Appellant. I will be brief. There are only a couple of areas that I would like to highlight. This matter has been briefed. I'd like to highlight the area of restitution. Mr. Pryce, acting as a bankruptcy trustee, entered a plea agreement where he admitted that he had committed two species or types of criminal acts in connection with the bankruptcy cases. The first was the arrangement to illegally split fees with the real estate brokers. And the second was to obtain personal benefit by the hiring of a contracting company, whereby he obtained personal additions and construction of his homes at no charge and used this same company in bankruptcy estates. Now, there are several kinds of restitution claims for which the district court made an award, and they included certain costs of investigations by the subsequent bankruptcy trustees, certain attorney's fees to the law firm of which Mr. Pryce was a member, certain lost profits on the sales of real property, and also some alleged failures to pursue assets or allowing certain debtors to retain assets in property. There should be a nexus or direct connection between the criminal acts and the restitution that is requested. Let me begin by addressing the bonding companies. Every trustee in bankruptcy is required to have a bond in all of the cases in which that trustee serves, and the purpose of that bond is to safeguard the creditors of that bankruptcy estate from any misdeeds, including negligence, that a bankruptcy trustee may commit. There were settlements between the seven bankruptcy estates and the three bonding companies, whereby each bonding company paid $700,000 for a total of $2.1 million. And the total amount of those bonding company claims or payments were awarded as restitution without any finding or parsing out of what the $700,000 was on account of. Was it on account of the improper commission splits? Was it on account of the services provided by SCORSA, that's the contracting company? We cannot tell. Was it on account of these other acts unrelated to the criminal conduct? We don't know. So, to that extent, or to some extent, it is an overstated claim, unless the district court made specific investigations, specific factual findings, that the full $2.1 million resulted directly from the criminal conduct. With respect to the cost of the investigation by the subsequent bankruptcy trustees, they were not victims as a result of the cost of the investigation. They simply were doing their duty looking into the conduct of Mr. Price. And in that regard, they found what they contended to be negligence. For example, the selling of real properties for less than what they contend was the fair value of those properties. And it is a bit ironic, I think, since he was benefiting from the sales of the real property through the splitting of the commissions, that he would have sold the properties for less than their fair value. There is no relationship, we argue, between the alleged sales for less than fair value and the criminal conduct involved. The opposite would be true. However, as we deal with restitution in these matters of appeal, what do you determine to be our standard of review here? Your Honor, we have set that forth as an abuse of discretion. Correct. And so if we look at this evidence that we have in front of us, which you are giving good comment about, and we find that the judge in his discretion could have reached the determination that he's met, even if we disagree as to his factual finding, we'd have to necessarily go with him, wouldn't we? If there was a basis for the factual finding, that is true. What we're saying is there is nothing in the record that supports the basis for that factual finding. I understand your argument. Would you tell me a little bit about the residence? Your Honor, the residence was held in a trust. The trust was created in 1995. I will admit there is not much in the record below concerning this, so what I'm telling the Court is not in the record. I mean, my worry is that as I relate to an abuse of discretion standard of review and the amount of stuff I find about this residence in the record, that that is the toughest point for me to get to. I understand, Your Honor. The residence was held in a trust. It was placed in the trust upon its purchase. There was a subsequent house that was held in the trust. It was sold. The lenders required personal signatures on the loans, not the trust signatures. That's how it wound up in the trust. The trust was not before the Court and did not have an opportunity to defend itself. We have briefed that, and the Court can rule as it will. Wasn't there some evidence that the District Court could have relied on that Mr. Price controlled the property in that trust? I'm not going to argue the contrary to that. I think there was. I will tell the Court, too, that the property has subsequently been foreclosed. So, to that extent, I'm not sure how important it is anymore. There were some surplus proceeds, but only a nominal amount in relationship to the restitution awards. May I also ask you about the fees to Mr. Price's law firm? Yes. Those were all identified by the District Court as being a restitution amount. Yes. Was there services performed by Mr. Price that were not related to the fraudulent conduct? Was there other legitimate trustee services? We say yes, Your Honor. Can you give me some examples of what those would have been? Yes, Your Honor, I can do that. The trustee in bankruptcy serves and has particular duties under the Bankruptcy Code to perform certain acts. And under certain conditions, the United States Bankruptcy Court can approve the employment of lawyers to perform legal services on behalf of the bankruptcy estate. Those legal services would include, among other things, if there were disputes regarding liens against properties, obtaining court authority to sell properties. Oftentimes under the Bankruptcy Code, properties are sold free and clear of liens. And there are certain specific conditions under which that occurs, and it requires legal services to perform those acts. Some of these properties were operating real properties, so there would have been legal services required to obtain the employment of certain persons to act on behalf of the trustee. I have not reviewed the fee applications that were the subject matter by which the fees were approved by the Bankruptcy Court. So I don't have, and it's not in the record, what was performed on the legal services. I do not believe that Mr. Price was the lawyer who was performing the services in question. It was Mr. Hill, Mr. Price's partner. And the application for the employment of the firm is a matter independent of the employment of the real estate brokers, two separate concepts. And whenever a trustee in bankruptcy employs their own law firm, they indirectly benefit because they're a partner of the firm in sharing the profits. And that's accepted and acceptable under the Bankruptcy Code, and that's why the Bankruptcy Court authorized the employment of the firm. So that is why we contend that there is no nexus between the employment of the firm and the criminal acts, and there's nothing in the record suggesting that the law firm engaged in any way in assisting Mr. Price in carrying out the criminal conduct in question. Excuse me. This is Judge Nelson. Yes. Are you suggesting that the issue raised about the Darzana property is now moot because the property has been sold? No, I am not. There was a foreclosure sale, and at the foreclosure sale there was a bid amount more than the initial bid by the foreclosing party. There was a surplus on that sale of about $65,000. And where is that money now? It's in an interpleader action in the state court. So what do you recommend we do with that issue that's raised here? We're recommending that the court rule that there was no jurisdiction over the trust in order to make the ruling that the court did, that the trust did not appear in the case, and therefore it was improper. All right. Thank you. I have nothing further. Thank you. Thank you. Your Honors, good morning. Rob Keenan for the government. I'd like to address for just a moment the 80-month term of imprisonment. The defendant has a number of challenges. As we submit in our papers, we don't believe that any of it is subject to review at this time on appeal due to various waivers below. The appellate waiver, provided there was no breach by the government, bars the appeal, the defendant's appeal of his 80-month term of imprisonment. The difficulty that the defendant has on appeal is that he's failed in the district court proceedings to assert any breach by the government. The defendant's only argument on that point is that in the 2255 motion, a couple of months after the sentencing hearing, he asserted a breach. That's not a timely contemporaneous objection that's adequate to preserve the breach claim. Moreover, the defendant denies it. Ultimately, his basic point is that the government didn't argue, due to a failure to consider all of his substantial assistance or his cooperation, didn't argue for enough of a departure in its 5K1 motion. I think the main point there is that the government, that particular issue about how much weight the government assigns to substantial assistance and how much of a departure it is asking for at the time of sentencing, is solely a matter under the terms of the plea agreement within the exclusive purview of the government. There's no lack of clarity on that in the plea agreement. It makes clear that the government has its, within the sole and exclusive discretion is the language for the government to decide how much substantial assistance ought to be, how much of a departure ought to be granted based on any finding of substantial assistance. And ultimately, there was no breach. The prosecutor handled this case below, did everything the plea agreement obligated him to do. He apprised the court of the defendant's cooperation. He filed a motion after determining that the cooperation qualified as substantial assistance. He evaluated that as a three-level, justifying a three-level departure. There was nothing about the government's presentation that was incorrect. There was no failure to explain particular things that the defendant did. It's just a question of degrees of detail that ultimately the defendant claims constitutes a breach. And we think that the government's motion, the consolidated motion that it filed on district court, adequately apprised the court of the defendant's cooperation efforts and thus complied with the government's obligations under the plea agreement. And as to the lost calculations, the defendant, at the time of sentencing, his counsel expressly conceded that the PSR's calculations were accurate. He did that at, I believe it's in our record, GE 42. And paragraphs 168 and 189 of the PSR are identical to the plea agreement's stipulations. I won't spend any time with the ineffective assistance of counsel claim. As to restitution, there are several issues. And I, too, thought about rather than going state by state, sort of addressing it by issue. It's my understanding in the reply brief that the defendant has conceded that all of the investigative costs of the successor trustees, legal fees, et cetera, incurred by them in the investigation of the defendant's conduct are properly compensable. We've cited a statute which is directly on point as well as two Ninth Circuit cases. The insurers, you know, the section 3664J1 expressly authorizes the challenged order, granting restitution in the amount of $700,000 to each of the insurers in this case. They made those payments to the victims, the bankruptcy estates and creditors in those cases, specifically to compensate them for the defendant's criminal conduct in connection with his management of the bankruptcy estate as the Chapter 7 trustee in each of those estates. If I could interrupt you for a moment and just direct your attention to the restitution order for all of the fees that were awarded to Mr. Price's law firm. The Evangeline case, which the government relies on, is somewhat distinguishable as that's more of a fraud on the bankruptcy court type of issue. Why shouldn't the restitution just be for the unearned fees and not for fees that were otherwise earned and legitimate? Well, I think for a number of reasons. The indictment in paragraph 14 of the bankruptcy case, that's tab 3 of the excerpts of record at page 5, refers to essentially a fraud in the inception. At the time the defendant agreed to serve as the Chapter 7 trustee in those cases, he had these collusive arrangements with Shelton & Associates, the real estate broker. The facts admitted in the plea agreement, page 20 of tab 6, admit that that collusive arrangement began in July of 1998, before any of the bankruptcy cases at issue in this case were filed. So that preexisting arrangement that he had, a collusive, fraudulent arrangement in breach of his duty of honest services, existed prior to the time. So we have facts establishing essentially fraud in the inception. At the time, the defendant undertook to serve as the Chapter 7 trustee in all of those cases. Moreover, I think it's important, in light of the defendant's fraud, his fraudulent and collusive arrangements with Shelton, the real estate broker, and Scorza, the construction contractor, there was ample ground for the successor trustees in all of those cases to have to essentially redo everything to make sure there wasn't other fraud, to make sure that the defendant did his job correctly. So as a result of that, the bankruptcy estates essentially didn't receive any value or benefit as a result of the defendant's services in this case, in any of the subject bankruptcy estates. And I think that's another separate reason why all of those fees charged by the defendant and paid to him prior to the discovery of the crime are properly compensable as restitution. The double recovery argument, I think our papers make clear, the district court cut that out. All of the insurance payments that were made to the bankruptcy estates of Rodeo Cannon, Humber, Avakian, and Gulabi were reduced by the amounts that they received from the insurance companies as a result of the settlement with them. So we don't think there's any ground for concern that there's double recovery in this case. And for the Tarzana residence, the district court didn't address or resolve the dispute over Mr. Price's ownership or control of that property. We believe that there's ample evidence in the record. The defendant's sworn affidavits, the cash flow statement and the net worth statement that are attached to the pre-sentence report where the defendant makes admissions regarding, for example, monthly mortgage payments on that residence. Also the deposition testimony that was attached to a brief filed by the victims. It's part of our government's excerpts of record at 104 to 131. There's some deposition testimony that's excerpted there where the defendant admits he bought the home. It was initially in his name in July of 2001. He transferred it sometime between 2001 and September 2004. He isn't specific as to when that occurred. But he made clear in his testimony that he did so essentially to protect the asset from creditors. But does that matter as a matter of federal law? I mean, does it matter if he transferred the property for whatever reason? If he no longer owns it, how can the court order it to be sold? Well, I think the evidence supports the finding that since he did control and owned it in everything other than name alone, he was living there with his wife throughout the time up until the date of the sentencing hearing. Again, he was continuing, I think, up until a few months before the sentencing hearing, making mortgage payments on that residence. So we think there's evidence in the record to support the finding that, in essence, it was his home and that that was a mere construct, a fraudulent transfer that ought not to be honored or respected. One other question I had, there was a restitution element relating to the Chu estate, relating to, I guess, a title company kickback scheme. That conduct, I understand, was not charged. And so what would be the authority under the MVRA, the Mandatory Victim Restitution Act, as opposed to the VWPA? I know there's some case law under that that would allow restitution for uncharged conduct. I wasn't sure whether under the MVRA that was allowed. I think we cite to a code section, I think it's 3664F, but I'd have to double-check my brief on that point. It's in the section on the Chewy bankruptcy estate. I think we cite to a case that indicates that, I'm sorry, not a case, a statutory provision that says that the restitution provision relates to uncharged conduct as well. It's not limited solely to the scope of the indictment, as long as it constitutes relevant conduct. There's a couple of other sort of, I guess, big-ticket items I should address. There were some lost profits that were part of compensation or restitution order for two of the estates, and that related to the sale of properties by the collusive broker, Shelton, without any appraisal. The successor trustees introduced evidence that's in the record in our DER, and I think also under tab 11 of the defendant's excerpts, indicating that the amount for which those properties were sold was less than the appraised value of the properties. And to address the defendant's point, I think the relation there is, or one reasonable inference that would justify on this record the restitution order, is that because the real estate broker, Shelton, was incurring essentially substantial costs through this split fee arrangement where he was making substantial payments to the defendant and to the defendant's daughter as part of their kickback arrangement, that there was an interest that Shelton had in minimizing costs, namely by not seeking out an appraisal of the two properties. So we think there's a sufficient approximate nexus for that as well. I think one last point related to the insurance. This is on the Humber estate. The defendant's failure to make a timely insurance claim for the repairs on the Don Miguel Drive home. As we indicated in our brief, it's related to the defendant's offense conduct because to the extent an insurance company is involved in paying for the construction repairs and pricing it, et cetera, they would be more involved in dealing, or involved at all, in dealing with Scorza, the construction worker who was handling those repairs. And there was an interest on the part of the defendant in concealing the kickback arrangement that he had with Scorza, and thus an interest in avoiding any involvement of an insurance company in paying for his work. Unless the court has any questions, I'd submit. Thank you. Did you want to use your reserved time? I don't want to. Thank you. This case is submitted.
judges: Nelson, Ikuta, Smith